IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

BIG DADDY GAMES LLC,

        Plaintiff,

        v.

USA PULLTABS, LLC,
ANNA SCHMITZ, and
ANDREW SCHMITZ

        Defendants.

Case Number: 26-cv-683

## COMPLAINT

Plaintiff, BIG DADDY GAMES LLC, by its attorneys Smith Keane LLP, by Garet K. Galster, Melissa A. Spindler, and Jordan A. Liff, for its Complaint against Defendants USA PULLTABS LLC, ANNA SCHMITZ, and ANDREW SCHMITZ (collectively, the Defendants) alleges as follows:

### THE PARTIES

1. Plaintiff Big Daddy Games LLC (hereinafter "BDG") is a Wisconsin limited liability company having a principal place of business address at 733 Midway Road, Menasha, Wisconsin 54952.

2. Upon information and belief, Defendant USA Pulltabs LLC (hereinafter "USAPT") is a Wisconsin limited liability corporation having a principal place of business address at 403 Causeway Boulevard, La Crosse, Wisconsin 54603.

3. Upon information and belief, Defendant Anna Schmitz is an individual having a residential address at 7935 Drake Road, Saint Paul, Minnesota 55125.

1

4.	Upon information and belief, Defendant Andrew Schmitz is an individual having a residential address at 7935 Drake Road, Saint Paul, Minnesota 55125.

**JURISDICTION AND VENUE**

5.	This action arises under the trade secret laws of the United States, 18 U.S.C. § 1836 et seq. and the laws of the State of Wisconsin and is a complaint for trade secret misappropriation, breach of contract, unfair competition, unjust enrichment, and fraud. This Court has subject matter jurisdiction over these claims pursuant to 18 U.S.C. § 1836(c) and 28 U.S.C. §§ 1331 and 1367.

6.	This Court has personal jurisdiction over Defendants because Defendants are engaged in substantial and not isolated activities within this state.

7.	This Court has personal jurisdiction over Defendant USAPT because it is a domestic (Wisconsin) limited liability company.  This Court has personal jurisdiction over USAPT also because it assented to such jurisdiction in § 15 of the MNDA, attached as Exhibit A.

8.	Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred within this judicial district.

9.	Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(d), because Defendant USAPT resides in this district because its contacts would be sufficient to subject it to personal jurisdiction if this judicial district were a separate State.

10.	Venue in this jurisdiction was agreed to by USAPT and BDG in § 15 of the MNDA, attached as Exhibit A.

2

## FACTUAL BACKGROUND AND NATURE OF THE CASE

### About BDG

11. BDG is a privately-owned company founded with a clear mission of becoming the leading manufacturer of proprietary electronic games and related equipment.

12. The products manufactured by BDG include the latest designed software, printer and game related support systems, including patent-pending systems and a variety of popular cabinet styles.

13. BDG has staff with decades of experience in the industry, comprising employees who specialize in software engineering, cabinet production, and technical service.

14. BDG's staff works on products throughout the entirety of the production cycle, from conception to product development to service and support.

15. BDG has customers in multiple states, including Wisconsin.

16. The products and software BDG creates are quality tested to ensure the highest quality performance and experience for customers.

17. BDG constantly strives to create new and innovative products, enter into new markets, and address the needs and concerns of customers.

18. BDG manufactures, amongst other products, software and hardware related to pull-tab game ticket systems and/or kiosks and/or redemption systems.

### Defendants' Acts

19. Defendant USAPT historically (prior to the MNDA described below) printed, distributed, and sold paper pull-tab tickets for bars, restaurants, casinos, and other entertainment venues.

20. On information and belief, Defendants Anna and Andrew are the owners and/or

3

managing partners of USAPT.

21.     USAPT still manufactures and sells paper pull-tab tickets and now offers related electronic redemption systems.

22.     In the summer of 2023, BDG and USAPT were in contact regarding a potential partnership for a new product invention being developed by BDG.

23.     Before disclosing the invention or exchanging any other proprietary information, BDG and USAPT (the "Parties" or, individually, "Party") entered into a "Mutual Non-Disclosure Agreement" (the "MNDA"), which was dated August 1, 2023. A true and correct copy of the MNDA is attached herewith as Exhibit A.

24.     The first recital of the MNDA defined "Confidential Information" as, among other things, "technical and business information relating to proprietary ideas, patentable ideas and/or trade secrets, [and] existing and/or contemplated products and services . . . regardless of whether such information is designated as confidential the time of its disclosure."

25.     The only purpose of MNDA was "exchange of information relative to the design and development of process, software, and/or hardware, to be able to dispense and redeem pull-tab game tickets utilizing systems and/or kiosks developed by Big Daddy Games LLC" where such tickets would include QR code or barcode technology.

26.     In the MNDA, USAPT agreed to indemnify and save harmless BDG from all damages, losses, expenses and costs whatsoever resulting from a breach of the MNDA by USAPT.

27.     The MNDA further required each Party to protect the other Party's disclosed Confidential Information and keep it confidential by not directly or indirectly disclosing, allowing access to, transmitting or transferring the disclosing Party's Confidential Information to

4

any third party without the disclosing Party's prior written consent.

28.     The Parties agreed in the MNDA that, if there is a breach of any provision of the MNDA, the non-breaching party has no adequate remedy and shall be entitled to injunctive relief.

29.     Anna Schmitz signed the MNDA on behalf of USAPT and initialed every page.

30.     After the MNDA was signed by representatives of both USAPT and BDG, the parties began to exchange Confidential Information.

31.     BDG expended time, labor, and money in the creation of its Confidential Information.

32.     For example, Howard Smoyer ("Smoyer"), an employee of BDG, sent an email on August 8, 2023, to Anna Schmitz and attached a document (the "TRT Outline") outlining BDG's newest invention, a Ticket Redemption Terminal (TRT) that utilizes a scanner to scan a code on a printed pull-tab ticket to automatically redeem winning pull-tabs (the "TRT Invention"). A true and correct copy of the email from Smoyer to Anna Schmitz with the TRT Outline is attached herewith as Exhibit B.

33.     Smoyer's email and the TRT Outline also disclosed several other aspects of BDG's TRT Invention, including functionality, means, operations, and several other aspects of BDG's TRT Invention.

34.     Smoyer and Anna Schmitz further discussed BDG's TRT Invention and its many capabilities in later emails as well. A true and correct copy of these emails are attached herewith as Exhibit C.

35.     Prior to February 16, 2024, BDG did not disclose the Confidential Information, including the TRT Invention, to anyone other than the Defendants after the MNDA was signed.

36. At the time of disclosure to the Defendants, the TRT Invention and BDG's other Confidential Information were trade secrets, kept under strict secrecy within BDG and not told to anyone outside BDG unless under a non-disclosure agreement, such as the MNDA.

37. BDG did not give any consent for the Defendants to disclose or use any of BDG's Confidential Information, including the TRT Invention, other than for USAPT review.

38. The TRT Invention derived independent economic value from not being generally known to, and not being readily ascertainable through proper means by, any other person who could obtain economic value from the disclosure or use thereof.

39. In the summer of 2024, Smoyer contacted Anna Schmitz and Andrew Schmitz again regarding concerns BDG had with USAPT's use of BDG's Confidential Information, including that USAPT was encroaching on BDG's pull-tab redemption ideas with their own products. A true and correct copy of Smoyer's email is attached herewith as Exhibit D.

40. More than just offering products though, the Defendants filed at least one provisional utility patent application, three non-provisional utility patent applications, and one design application with the United States Patent and Trademark Office (USPTO) after the disclosure from BDG, and Anna Schmitz's further discussions with Smoyer, each disclosing at least aspects of BDG's Confidential Information, including the TRT Invention.

41. On information and belief, the provisional patent application filed by Defendants had an application number of 63/554,909 and a filing date of February 16, 2024 (the "Provisional Application").

42. On information and belief, the design patent application filed by Defendants has an application number of 29.934,702 and a filing date of March 27, 2024 (the "Design Application").

43. The three non-provisional patent applications filed by USAPT have since been published by the USPTO, further disclosing BDG's Confidential Information to the general public without BDG's permission.

**The `766 Application**

44. The first non-provisional patent application filed by Defendants has the application number 18/605,766 and was filed on March 14, 2024 (the "`766 Application"). A true and correct copy of the entire patent application file wrapper for the `766 Application as of April 10, 2026 has been attached herewith as Exhibit E.

45. The `766 Application claims priority back to the filing date of the Provisional Application, giving it an effective filing date of February 16, 2024.

46. The `766 Application names Anna Schmitz and Andrew Schmitz as inventors and USAPT as assignee and applicant.

47. The `766 Application disclosed to the USPTO the substance of BDG's Confidential Information, including the TRT Invention.

48. Defendants' filing of the `766 Application caused BDG's Confidential Information to be saved in the USPTO patent application database.

49. As part of the formal filing requirements, Anna Schmitz and Andrew Schmitz submitted signed declarations to the USPTO, under penalty of perjury, attempting to verify that each is "an original inventor or original joint inventor of a claimed invention in the application."

50. Anna Schmitz and Andrew Schmitz are not the original inventors or joint inventors of the substance of the `766 Application.

51. The `766 Application was published by the USPTO as U.S. Pub. No. 2025/0265902 (the "`902 Publication") on August 21, 2025. A true and correct copy of the `902

Publication is attached herewith as Exhibit F.

52. The `902 Publication, and subsequently the entirety of the `766 Application and its file wrapper, are publicly and freely available on the USPTO's Patent Center.

<strong>The `631 Application</strong>

53. The second non-provisional patent application filed by Defendants has the application number 18/744,631 and was filed on July 16, 2024 (the "`631 Application"). A true and correct copy of the entire patent application file wrapper for the `631 Application as of April 10, 2026 has been attached herewith as Exhibit G.

54. The `631 Application was filed as a continuation-in-part of the `766 Application.

55. The `631 Application names Anna Schmitz and Andrew Schmitz as the inventors and USAPT as the applicant and assignee.

56. The `631 Application disclosed to the USPTO the substance of BDG's Confidential Information, including the TRT Invention.

57. Defendants' filing of the `631 Application caused BDG's Confidential Information to be saved in the USPTO patent application database.

58. As part of the formal filing requirements, Anna Schmitz and Andrew Schmitz submitted signed declarations to the USPTO, under penalty of perjury, attempting to verify that each is "an original inventor or original joint inventor of a claimed invention in the application."

59. Anna Schmitz and Andrew Schmitz are not the original inventors or joint inventors of the substance of the `631 Application.

60. The `631 Application was published by the USPTO as U.S. Pub. No. 2025/0265903 (the "`903 Publication") on August 21, 2025. A true and correct copy of the `903 Publication is attached herewith as Exhibit H.

61. The `903 Publication, and subsequently the entirety of the `631 Application and its file wrapper, are publicly and freely available on the USPTO's Patent Center.

**The `244 Application**

62. The third utility non-provisional patent application filed by Defendants has the application number 19/043,244 and a filing date of January 31, 2025 (the "`244 Application"). A true and correct copy of the entire patent application file wrapper for the `244 Application as of April 10, 2026 has been attached herewith as Exhibit I.

63. The `244 Application was filed as a continuation-in-part of the `631 Application.

64. The `244 Application names Anna Schmitz and Andrew Schmitz as the inventors and USAPT as the applicant and assignee.

65. The `244 Application disclosed to the USPTO the substance of BDG's Confidential Information, including the TRT Invention.

66. Defendants' filing of the `244 Application caused BDG's Confidential Information to be saved in the USPTO patent application database.

67. As part of the formal filing requirements, Anna Schmitz and Andrew Schmitz submitted signed declarations to the USPTO alleging that they each are "an original inventor or original joint inventor of a claimed invention in the application."

68. Anna Schmitz and Andrew Schmitz are not the original inventors or joint inventors of the substance of the `244 Application.

69. The `244 Application was published by the USPTO as U.S. Pub. No. 2025/0265907 (the "`907 Publication") on August 21, 2025. A true and correct copy of the `907 Publication is attached herewith as Exhibit J.

70. Each of the `902 Publication, `903 Publication, and `907 Publication discloses

9

BDG's Confidential Information, including the TRT Invention, to the general public without BDG's consent, in writing or otherwise.

71. BDG also filed its own patent application claiming its TRT Invention, however the filing date for BDG's application is later than the effective filing date of the `766 Application.

**Count I**
**Trade Secret Misappropriation – USAPT**
**18 USC § 1836**

72. BDG repeats and re-alleges each and every allegation of paragraphs 1 through 71 as though fully set forth herein.

73. BDG owns the TRT Invention, which it kept secret from third parties and only disclosed to Defendants after mutually entering the MNDA with USAPT.

74. BDG's Confidential Information is intended for use by BDG in products and services in multiple states.

75. USAPT misappropriated BDG's Confidential Information by using it other than for the purpose described in the NDA, such improper use being at least drafting and filing the Provisional Application, `766 Application, `631 Application, and `234 Application.

76. At the time of drafting and filing the Provisional Application, `766 Application, `631 Application, and `234 Application, USAPT knew or had reason to know that the knowledge of the TRT Invention was acquired under circumstances giving rise to a duty to limit the use thereof.

77. USAPT also misappropriated BDG's Confidential Information by disclosing it to the USPTO through the Provisional Application, `766 Application, `631 Application, and `234 Application despite USAPT's obligations under the MNDA to keep such information

10

confidential.

78.     At the time of disclosure to the USPTO, USAPT knew or had reason to know that the knowledge of the TRT Invention was acquired under circumstances giving rise to a duty to maintain the secrecy thereof.

79.     Defendants further misappropriated BDG's Confidential Information by causing it to be disclosed to the general public through the `902 Publication, `903 Publication, and `907 Publication before BDG's own patent application was published.

80.     BDG never gave USAPT any authorization or consent, through writing or otherwise, to use BDG's Confidential Information to draft and file patent applications of any kind or to disclose BDG's Confidential Information to any third party.

81.     At all times of USAPT's unauthorized use and disclosure of BDG's Confidential Information, USAPT owed BDG a duty to maintain the secrecy of the Confidential Information by virtue of the MNDA.

82.     By reason of the foregoing acts, USAPT committed trade secret misappropriation of at least the TRT Invention. BDG has been damaged and has suffered and will continue to suffer immediate and irreparable harm.

**Count II**
**Trade Secret Misappropriation – ANNA SCHMITZ**
**18 USC § 1836**

83.     BDG repeats and re-alleges each and every allegation of paragraphs 1 through 82 as though fully set forth herein.

84.     BDG owns the TRT Invention, which it kept secret from third parties and only disclosed to Defendants after mutually entering the MNDA with USAPT.

85.     Defendant Anna Schmitz knew of the MNDA.

11

86. Defendant Anna Schmitz misappropriated BDG's Confidential Information by using it other than for the purpose described in the NDA, such improper use being at least drafting and filing the Provisional Application, `766 Application, `631 Application, and `234 Application.

87. At the time of drafting and filing the Provisional Application, `766 Application, `631 Application, and `234 Application, Defendant Anna Schmitz knew or had reason to know that the knowledge of the TRT Invention was derived from or through a person (USAPT) who owed a duty to BDG to limit the use thereof.

88. Defendant Anna Schmitz also misappropriated BDG's Confidential Information by disclosing it to the USPTO through the Provisional Application, `766 Application, `631 Application, and `234 Application despite USAPT's obligations under the MNDA to keep such information confidential.

89. At the time of disclosure to the USPTO, Defendant Anna Schmitz knew or had reason to know that the knowledge of the TRT Invention was derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy thereof.

90. BDG never gave Defendant Anna Schmitz any authorization or consent, through writing or otherwise, to use BDG's Confidential Information to draft and file patent applications of any kind or to disclose BDG's Confidential Information to any third party.

91. At all times of Defendant Anna Schmitz's unauthorized use and disclosure of BDG's Confidential Information, Anna Schmitz knew that USAPT owed BDG a duty to maintain the secrecy of the Confidential Information by virtue of the MNDA.

92. By reason of the foregoing acts, Defendant Anna Schmitz committed trade secret misappropriation of at least the TRT Invention. BDG has been damaged and has suffered and

will continue to suffer immediate and irreparable harm.

## Count III
### Trade Secret Misappropriation – ANDREW SCHMITZ
### 18 USC § 1836

93.     BDG repeats and re-alleges each and every allegation of paragraphs 1 through 92 as though fully set forth herein.

94.     BDG owns the TRT Invention, which it kept secret from third parties and only disclosed to Defendants after mutually entering the MNDA with USAPT.

95.     Defendant Andrew Schmitz knew of the MNDA.

96.     Defendant Andrew Schmitz misappropriated BDG's Confidential Information by using it other than for the purpose described in the NDA, such improper use being at least drafting and filing the Provisional Application, `766 Application, `631 Application, and `234 Application.

97.     At the time of drafting and filing the Provisional Application, `766 Application, `631 Application, and `234 Application, Defendant Andrew Schmitz knew or had reason to know that the knowledge of the TRT Invention was derived from or through a person (USAPT) who owed a duty to BDG to limit the use thereof.

98.     Defendant Andrew Schmitz also misappropriated BDG's Confidential Information by disclosing it to the USPTO through the Provisional Application, `766 Application, `631 Application, and `234 Application despite USAPT's obligations under the MNDA to keep such information confidential.

99.     At the time of disclosure to the USPTO, Defendant Andrew Schmitz knew or had reason to know that the knowledge of the TRT Invention was derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy thereof.

100.    BDG never gave Defendant Andrew Schmitz any authorization or consent, through writing or otherwise, to use BDG's Confidential Information to draft and file patent applications of any kind or to disclose BDG's Confidential Information to any third party.

101.    At all times of Defendant Andrew Schmitz's unauthorized use and disclosure of BDG's Confidential Information, Andrew Schmitz knew that USAPT owed BDG a duty to maintain the secrecy of the Confidential Information by virtue of the MNDA.

102.    By reason of the foregoing acts, Defendant Andrew Schmitz committed trade secret misappropriation of at least the TRT Invention. BDG has been damaged and has suffered and will continue to suffer immediate and irreparable harm.

### Count IV
### Breach of Contract as to the Provisional Application

103.    BDG repeats and re-alleges each and every allegation of paragraphs 1 through 102 as though fully set forth herein.

104.    USAPT was bound by the MNDA to hold BDG's Confidential Information in trust and confidence and only use BDG's Confidential Information as defined under the MNDA in § 3, to protect BDG's Confidential Information and keep it confidential by not directly or indirectly disclosing, allowing access to, transmitting or transferring BDG's Confidential Information to any third party BDG's prior written consent under § 4, and not store BDG's Confidential Information in a retrieval system or data base without BDG's prior written consent under § 5.

105.    Despite these obligations, Defendants used BDG's Confidential Information to file the Provisional Application.

106.    Through the Provisional Application, Defendants caused BDG's Confidential Information to be disclosed to the USPTO.

14

107. Through the Provisional Application, Defendants caused BDG's Confidential Information to be stored in the USPTO's database.

108. BDG never gave Defendants consent, in writing or otherwise, to use BDG's Confidential Information to draft and file any patent application, to disclose BDG's Confidential Information in any way to any third party, or to store BDG's Confidential Information in any database or retrieval system.

109. Accordingly, Defendants materially breached at least §§ 3, 4, and 5 of the MNDA through filing the Provisional Application.

110. By reason of the foregoing acts, Defendants committed multiple breaches of the MNDA. BDG has been damaged and has suffered and will continue to suffer immediate and irreparable harm. Unless enjoined by the Court, Defendants will continue to cause irreparable injury and damage to BDG. BDG is without adequate remedy at law.

### Count V
### Breach of Contract as to the `766 Application and `902 Publication

111. BDG repeats and re-alleges each and every allegation of paragraphs 1 through 110 as though fully set forth herein.

112. USAPT was bound by the MNDA to hold BDG's Confidential Information in trust and confidence and only use BDG's Confidential Information as defined under the MNDA in § 3, to protect BDG's Confidential Information and keep it confidential by not directly or indirectly disclosing, allowing access to, transmitting or transferring BDG's Confidential Information to any third party BDG's prior written consent under § 4, and not store BDG's Confidential Information in a retrieval system or data base without BDG's prior written consent under § 5.

113. Despite these obligations, Defendants used BDG's Confidential Information to

file the `766 Application.

114. Through the `766 Application, Defendants caused BDG's Confidential Information to be disclosed to the USPTO and later to the public in general through the `902 Publication.

115. Through the `766 Application, Defendants caused BDG's Confidential Information to be saved in the USPTO's database and retrieval system.

116. BDG never gave Defendants consent, in writing or otherwise, to use BDG's Confidential Information to draft and file any patent application, to disclose BDG's Confidential Information in any way to any third party, or to store BDG's Confidential Information in any database or retrieval system.

117. Accordingly, Defendants materially breached at least §§ 3, 4, and 5 of the MNDA through filing the `766 Application and allowing it to publish as the `902 Publication.

118. By reason of the foregoing acts, Defendants committed multiple breaches of the MNDA. BDG has been damaged and has suffered and will continue to suffer immediate and irreparable harm. Unless enjoined by the Court, Defendants will continue to cause irreparable injury and damage to BDG. BDG is without adequate remedy at law.

### Count VI
### Breach of Contract as to the `631 Application and `903 Publication

119. BDG repeats and re-alleges each and every allegation of paragraphs 1 through 118 as though fully set forth herein.

120. USAPT was bound by the MNDA to hold BDG's Confidential Information in trust and confidence and only use BDG's Confidential Information as defined under the MNDA in § 3, to protect BDG's Confidential Information and keep it confidential by not directly or indirectly disclosing, allowing access to, transmitting or transferring BDG's Confidential

Information to any third party BDG's prior written consent under § 4, and not store BDG's Confidential Information in a retrieval system or data base without BDG's prior written consent under § 5.

121. Despite these obligations, Defendants used BDG's Confidential Information to file the `631 Application.

122. Through the `631 Application, Defendants caused BDG's Confidential Information to be disclosed to the USPTO and later to the public in general through the `902 Publication.

123. Through the `631 Application, Defendants caused BDG's Confidential Information to be saved in the USPTO's database and retrieval system.

124. BDG never gave Defendants consent, in writing or otherwise, to use BDG's Confidential Information to draft and file any patent application, to disclose BDG's Confidential Information in any way to any third party, or to store BDG's Confidential Information in any database or retrieval system.

125. Accordingly, Defendants materially breached at least §§ 3, 4, and 5 of the MNDA through filing the `631 Application and allowing it to publish as the `903 Publication.

126. By reason of the foregoing acts, Defendants committed multiple breaches of the MNDA. BDG has been damaged and has suffered and will continue to suffer immediate and irreparable harm. Unless enjoined by the Court, Defendants will continue to cause irreparable injury and damage to BDG. BDG is without adequate remedy at law.

### Count VII
### Breach of Contract as to the `244 Application and `907 Publication

127. BDG repeats and re-alleges each and every allegation of paragraphs 1 through 126 as though fully set forth herein.

17

128. USAPT was bound by the MNDA to hold BDG's Confidential Information in trust and confidence and only use BDG's Confidential Information as defined under the MNDA in § 3, to protect BDG's Confidential Information and keep it confidential by not directly or indirectly disclosing, allowing access to, transmitting or transferring BDG's Confidential Information to any third party BDG's prior written consent under § 4, and not store BDG's Confidential Information in a retrieval system or data base without BDG's prior written consent under § 5.

129. Despite these obligations, Defendants used BDG's Confidential Information to file the `244 Application.

130. Through the `244 Application, Defendants caused BDG's Confidential Information to be disclosed to the USPTO and later to the public in general through the `902 Publication.

131. Through the `244 Application, Defendants caused BDG's Confidential Information to be saved in the USPTO's database and retrieval system.

132. BDG never gave Defendants consent, in writing or otherwise, to use BDG's Confidential Information to draft and file any patent application, to disclose BDG's Confidential Information in any way to any third party, or to store BDG's Confidential Information in any data base or retrieval system.

133. Accordingly, Defendants materially breached at least §§ 3, 4, and 5 of the MNDA through filing the `244 Application and allowing it to publish as the `907 Publication.

134. By reason of the foregoing acts, Defendants committed multiple breaches of the MNDA. BDG has been damaged and has suffered and will continue to suffer immediate and irreparable harm. Unless enjoined by the Court, Defendants will continue to cause irreparable

18

injury and damage to BDG. BDG is without adequate remedy at law.

## Count VIII
## Wis. Trade Secret Misappropriation - USAPT
## Wis. Stat. §134.90 et seq.

135. BDG repeats and re-alleges each and every allegation of paragraphs 1 through 134 as though fully set forth herein.

136. BDG owns the TRT Invention, which it kept secret from third parties and only disclosed to Defendants after mutually entering the MNDA with USAPT.

137. BDG's Confidential Information is intended for use by BDG in products and services in multiple states.

138. USAPT misappropriated BDG's Confidential Information by using it other than for the purpose described in the NDA, such improper use being at least drafting and filing the Provisional Application, `766 Application, `631 Application, and `234 Application.

139. At the time of drafting and filing the Provisional Application, `766 Application, `631 Application, and `234 Application, USAPT knew or had reason to know that USAPT obtained knowledge of the TRT Invention by acquiring it under circumstances giving rise to a duty to limit the use thereof.

140. USAPT also misappropriated BDG's Confidential Information by disclosing it to the USPTO through the Provisional Application, `766 Application, `631 Application, and `234 Application despite USAPT's obligations under the MNDA to keep such information confidential.

141. At the time of disclosure to the USPTO, USAPT knew or had reason to know that USAPT obtained knowledge of the TRT Invention by acquiring it under circumstances giving rise to maintain its secrecy.

19

142. Defendants further misappropriated BDG's Confidential Information by causing it to be disclosed to the general public through the `902 Publication, `903 Publication, and `907 Publication before BDG's own patent application was published.

143. BDG never gave USAPT any authorization or consent, through writing or otherwise, to use BDG's Confidential Information to draft and file patent applications of any kind or to disclose BDG's Confidential Information to any third party.

144. At all times of USAPT's unauthorized use and disclosure of BDG's Confidential Information, USAPT owed BDG a duty to maintain the secrecy of the Confidential Information by virtue of the MNDA.

145. By reason of the foregoing acts, USAPT committed trade secret misappropriation of at least the TRT Invention. BDG has been damaged and has suffered and will continue to suffer immediate and irreparable harm.

### Count IX
### Trade Secret Misappropriation – ANNA SCHMITZ
### Wis. Stat. §134.90 et seq.

146. BDG repeats and re-alleges each and every allegation of paragraphs 1 through 145 as though fully set forth herein.

147. BDG owns the TRT Invention, which it kept secret from third parties and only disclosed to Defendants after mutually entering the MNDA with USAPT.

148. Defendant Anna Schmitz knew of the MNDA.

149. Defendant Anna Schmitz misappropriated BDG's Confidential Information by using it other than for the purpose described in the NDA, such improper use being at least drafting and filing the Provisional Application, `766 Application, `631 Application, and `234 Application.

150. At the time of drafting and filing the Provisional Application, `766 Application, `631 Application, and `234 Application, Defendant Anna Schmitz knew or had reason to know that she obtained knowledge of the TRT Invention by deriving it from or through a person (USAPT) who owed a duty to BDG to limit its use.

151. Defendant Anna Schmitz also misappropriated BDG's Confidential Information by disclosing it to the USPTO through the Provisional Application, `766 Application, `631 Application, and `234 Application despite USAPT's obligations under the MNDA to keep such information confidential.

152. At the time of disclosure to the USPTO, Defendant Anna Schmitz knew or had reason to know that that she obtained knowledge of the TRT Invention by deriving it from or through a person (USAPT) who owed a duty to BDG to maintain its secrecy.

153. BDG never gave Defendant Anna Schmitz any authorization or consent, through writing or otherwise, to use BDG's Confidential Information to draft and file patent applications of any kind or to disclose BDG's Confidential Information to any third party.

154. At all times of Defendant Anna Schmitz's unauthorized use and disclosure of BDG's Confidential Information, Anna Schmitz knew that USAPT owed BDG a duty to maintain the secrecy of the Confidential Information by virtue of the MNDA.

155. By reason of the foregoing acts, Defendant Anna Schmitz committed trade secret misappropriation of at least the TRT Invention. BDG has been damaged and has suffered and will continue to suffer immediate and irreparable harm.

**Count X**
**Trade Secret Misappropriation – ANDREW SCHMITZ**
**Wis. Stat. §134.90 et seq.**

156. BDG repeats and re-alleges each and every allegation of paragraphs 1 through

155 as though fully set forth herein.

157. BDG owns the TRT Invention, which it kept secret from third parties and only disclosed to Defendants after mutually entering the MNDA with USAPT.

158. Defendant Andrew Schmitz knew of the MNDA.

159. Defendant Andrew Schmitz misappropriated BDG's Confidential Information by using it other than for the purpose described in the NDA, such improper use being at least drafting and filing the Provisional Application, `766 Application, `631 Application, and `234 Application.

160. At the time of drafting and filing the Provisional Application, `766 Application, `631 Application, and `234 Application, Defendant Andrew Schmitz knew or had reason to know that she obtained knowledge of the TRT Invention by deriving it from or through a person (USAPT) who owed a duty to BDG to limit its use.

161. Defendant Andrew Schmitz also misappropriated BDG's Confidential Information by disclosing it to the USPTO through the Provisional Application, `766 Application, `631 Application, and `234 Application despite USAPT's obligations under the MNDA to keep such information confidential.

162. At the time of disclosure to the USPTO, Defendant Andrew Schmitz knew or had reason to know that that she obtained knowledge of the TRT Invention by deriving it from or through a person (USAPT) who owed a duty to BDG to maintain its secrecy.

163. BDG never gave Defendant Andrew Schmitz any authorization or consent, through writing or otherwise, to use BDG's Confidential Information to draft and file patent applications of any kind or to disclose BDG's Confidential Information to any third party.

164. At all times of Defendant Andrew Schmitz's unauthorized use and disclosure of

BDG's Confidential Information, Andrew Schmitz knew that USAPT owed BDG a duty to maintain the secrecy of the Confidential Information by virtue of the MNDA.

165. By reason of the foregoing acts, Defendant Andrew Schmitz committed trade secret misappropriation of at least the TRT Invention. BDG has been damaged and has suffered and will continue to suffer immediate and irreparable harm.

**Count XI**
**Fraud on USPTO – No Assignment and False Declarations**

166. BDG repeats and re-alleges each and every allegation of paragraphs 1 through 165 as though fully set forth herein.

167. USAPT is identified in the `766 Application, `631 Application, and `244 Application as the Applicant, and having the right to take such filing action by virtue of being the assignee of all rights from all inventors of the claimed inventions.

168. USAPT is not the assignee of all rights from all inventors of the claimed inventions in the indicated applications.

169. Upon information and belief, as of their respective filing dates, USAPT was not the assignee of any rights from any inventor of the claimed inventions in the indicated applications.

170. Upon information and belief, the identification of USAPT as patent applicant by virtue of assignment was an intentional, material misrepresentation and a violation of USPTO rules.

171. Anna Schmitz and Andrew Schmitz submitted declarations to the USPTO identifying themselves as the original inventors or joint inventors of the inventions described in the `766 Application, `631 Application, and `244 Application.

172. However, the `766 Application, the `631 Application, and the `244 Application

23

derive from BDG's Confidential Information, specifically the TRT Invention.

173. Therefore, Anna Schmitz and Andrew Schmitz both misrepresented themselves as the original inventors or joint inventors in the inventions claimed in the `766 Application, the `631 Application, and the `244 Application.

174. On information and belief, Anna Schmitz and Andrew Schmitz purposefully misrepresented themselves as the original inventors or joint inventors in connection with the `766 Application, the `631 Application, and the `244 Application.

175. On information and belief, Anna Schmitz and Andrew Schmitz committed such misrepresentations to mislead the USPTO to allow application for patents on inventions that they did not invent.

176. By reason of the foregoing acts, Defendants Anna Schmitz and Andrew Schmitz committed fraud on the USPTO. As a result of their actions, BDG has been damaged and has suffered and will continue to suffer immediate and irreparable harm. For example, due to their misappropriation of BDG's Confidential information and filing of the `766 Application, the `631 Application, and the `244 Application, such applications may be used against BDG's own patent application in the USPTO's examination process.

**Count XII**
**Wis. Unfair Competition**

177. BDG repeats and re-alleges each and every allegation of paragraphs 1 through 176 as though fully set forth herein.

178. If it is found that any of the Confidential Information BDG disclosed to USAPT pursuant to the MNDA is not a trade secret, BDG asserts that Defendants committed unfair competition in the unauthorized disclosure and use of such Confidential Information.

179. USAPT had a duty to maintain the confidentiality of BDG's Confidential

24

Information.

180. Yet, Defendants disclosed such Confidential Information to the USPTO in the form of patent applications and caused the disclosure of such Confidential Information to the general public through the publication of such patent applications.

181. Therefore, Defendants breached their duty to maintain confidentiality and duty to limit use of the Confidential Information to the MNDA Purpose, thereby breaching the MNDA.

182. On information and belief, Defendants did so with the intent to mislead the USPTO to issue patents to USAPT on BDG's Confidential Information for use in direct competition with BDG in the pull-tab industry.

183. By reason of the foregoing acts, Defendants have engaged in unfair competition. As a result of Defendants' actions, BDG has been commercially damaged and has suffered and will continue to suffer immediate and irreparable harm.

### Count XIII
### Wis. Unjust Enrichment

184. BDG repeats and re-alleges each and every allegation of paragraphs 1 through 183 as though fully set forth herein.

185. If it is found that the MNDA between BDG and USAPT is for any reason legally invalid or otherwise did not exist, BDG asserts that USAPT was unjustly enriched.

186. Defendants Anna Schmitz and Andrew Schmitz have been unjustly enriched.

187. BDG gave Defendants the benefit of BDG's Confidential Information, including the TRT Invention.

188. BDG further gave Defendants the benefit of discussions and developments regarding the Confidential Information.

189. Defendants, being manufacturers of pull-tab products, had full appreciation and

25

knowledge of the benefit of BDG's Confidential Information.

190. In fact, Defendants appreciated it so much that they turned around and filed the Provisional Application, the `766 Application, the `631 Application, and the `244 Application, each describing and the latter 3 claiming the TRT Invention.

191. Defendants accepted and retained BDG's Confidential Information when they knew that the Confidential Information did not belong to them, including after the relationship between BDG and USAPT broke down.

192. Defendants also filed the Provisional Application, the `766 Application, the `631 Application, and the `244 Application, when they knew that they did not create or otherwise invent the substance of the applications, but rather derived such information from BDG's Confidential Information.

193. By reason of the foregoing acts, Defendants have been unjustly enriched. As a result of Defendants' actions, BDG has been damaged and has suffered and will continue to suffer immediate and irreparable harm.

**<u>Prayer for Relief</u>**

WHEREFORE, BDG prays for judgment in its favor and against Defendants with respect to all of the foregoing Counts as follows:

A. Immediately and preliminarily enjoining each Defendant, its servants, agents and employees, and all other persons in active concert or participation with any Defendant, and its successors and assigns, from directly or indirectly:

(1) using BDG's Confidential Information for any purpose;

(2) disclosing, allowing access to, transmitting, or transferring BDG's

26

Confidential Information to any third party without BDG's prior written consent;

(3) copying or reproducing BDG's Confidential Information, or causing the same to be copied or reproduced, in any form without BDG's prior written consent; or

(4) storing BDG's Confidential Information, or causing the same to be stored, in any retrieval system or database without BDG's prior written consent;

B. Holding Defendants' acts constitute trade secret misappropriation under federal and Wisconsin state law, as described above;

C. Holding Defendants' acts constitute material breaches of the MNDA, as described above;

D. Holding Defendants' acts constitute fraud on the USPTO, as described above;

E. Holding this case exceptional;

F. Permanently enjoining each Defendant, its servants, agents and employees, and all other persons in active concert or participation with any Defendant, and its successors and assigns, from directly or indirectly:

(1) using BDG's Confidential Information for any purpose;

(2) disclosing, allowing access to, transmitting, or transferring BDG's Confidential Information to any third party without BDG's prior written consent;

(3) copying or reproducing BDG's Confidential Information, or causing the same to be copied or reproduced, in any form without BDG's prior

27

written consent; or

(4) storing BDG's Confidential Information, or causing the same to be stored, in any retrieval system or database without BDG's prior written consent;

G. Ordering the Defendants, jointly and severally, to pay BDG:

(1) all profits, gains and advantages obtained by Defendants from the Defendants' unlawful conduct, including Defendants' profits in an amount to be determined at trial;

(2) all monetary damages sustained and to be sustained by BDG as a consequence of Defendants' unlawful conduct, including lost profits, in an amount to be determined at trial; and

(3) BDG's costs and disbursements incurred in connection with this action, including reasonable attorneys' fees; of which nothing pleaded herein shall constitute an election of remedies;

H. Assessing court costs against the Defendants; and

I. Awarding such other relief as this Court may deem just and proper.

**<u>Jury Demand</u>**

Pursuant to Fed. R. Civ. P. 38(b), BDG hereby demands and requests a trial by jury of all claims and issues so triable.

Date:   20 April 2026                           Respectfully submitted,

By:   s/Garet K. Galster
Garet K. Galster (Wis. Bar. No. 1056772)

28

Melissa A. Spindler
Jordan A. Liff

SMITH KEANE LLP
515 W. North Shore Dr., Suite 200
Hartland, WI  53029
Telephone: 262.563.1438
Facsimile: 262.563.1438
gkg@keaneip.com
mas@keaneip.com
docketing@keaneip.com

***Attorneys for Plaintiff***
***Big Daddy Games LLC***